[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STRIKE ENTIRE COUNTERCLAIM
This is an action to recover sums due pursuant to the terms of a commercial lease. By amended complaint, the plaintiff, Village Linc Corp., seeks recovery of these sums from the defendants, The Children's Store, Inc., d/b/a Tot-Ta-Trot, Carla Ahlers and Richard Ahlers.
The complaint alleges that the lease at issue was entered into on October 26, 1982, between the plaintiff/lessor's predecessor in title and the defendant Carla Ahlers d/b/a Tot-Ta-Trot, as lessee. The lease was for the use and occupancy of certain commercial premises known as 900 Village Walk, Guilford, Connecticut. CT Page 9075 Pursuant to a lease modification agreement entered into on November 6, 1985, the lessee of the premises became The Children's Store, Inc., d/b/a Tot-Ta-Trot (hereinafter "The Children's Store"). The complaint alleges that pursuant to the lease modification, the lease was personally guaranteed by the defendant, Carla Ahlers. It was also personally guaranteed by the defendant Richard Ahlers for a specified time period. On November 16, 1987, the lease was renewed for eight years.
According to the complaint, the defendants Carla Ahlers and the The Children's Store took and retained possession of the premises until February 9, 1992, without paying the agreed upon rental payments. On June 14, 1991, the plaintiff caused a notice to quit to be served upon the defendants, Carla Ahlers and The Children's Store. By complaint dated August 23, 1991, the plaintiff commenced this action to recover the rent and other charges due and owing pursuant to the lease.
On July 23, 1993, the defendants filed an answer to the amended complaint, along with four special defenses and a four count counterclaim.
The first count of the counterclaim alleges that inasmuch as neither Carla Ahlers nor Richard Ahlers were ever personally liable pursuant to the lease, it was "improper, negligent, an abuse of process and vexatious litigation" to name them in this lawsuit. Count two of the counterclaim alleges that the foregoing amounts to a violation of the Connecticut Unfair Trade Practices Act, General Statutes 42-110a et seq. (hereinafter "CUTPA"). Count three essentially alleges that due to its mismanagement of the premises, the plaintiff breached its "implied duty or obligation to exercise care, good faith and fair dealing." Count four alleges that the conduct referred to in count three as well as certain bad faith negotiations by the plaintiff, amount to a CUTPA violation.
On August 5, 1993, the plaintiff filed a motion to strike the defendants' counterclaims, for failure to state a claim upon which relief can be granted. As required by Practice Book 155, the plaintiff filed a memorandum of law in support of its motion, and the defendants have filed a memorandum in opposition.
DISCUSSION
The purpose of a motion to strike is to challenge the legal sufficiency of the allegations of any complaint to state a claim CT Page 9076 upon which relief can be granted. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 a.2d 1185 (1988). The motion to strike admits all facts well-pleaded, but it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368
(1985). The motion to strike must fail "if the facts provable under its allegations would support a . . . cause of action." Mingachos, supra, 109.
Count One
Count one of the counterclaim alleges that the lease terminated in June, 1990; that the defendants Richard Ahlers and Carla Ahlers were never personally liable pursuant to the terms of the lease; and that the naming of these individual defendants was "clearly improper, negligent, and abuse of process and vexatious litigation."[1]
A) Negligence
Assuming that count one attempts to allege a cause of action for negligence, the defendants have not alleged sufficient facts to support their claim. "`Negligence is a breach of duty.'" Shore v. Stonington, 187 Conn. 147, 151, 444 A.2d 1379 (1982) quoting Urban v. Hartford Gas Co., 139 Conn. 301, 304, 93 A.2d 292 (1952). Inasmuch as the defendants have not alleged the existence of any duty owed to them by the plaintiff, count one does not sufficiently allege a cause of action for negligence.
B) Abuse of Process
 An action for abuse of process lies against any person using "a legal, process against another in an improper manner or to accomplish a purpose for which it was not designed." Varga v. Pareles, [137 Conn. 663, 667, 81 A.2d 112 (1951)]; Schaefer v. O.K. Tool Co., 110 Conn. 528, 532-33, 148 A. 330
(1930). Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, 682, emphasizes that the gravamen of the action for abuse of process is the use of "a legal process . . . against another primarily CT Page 9077 to accomplish a purpose for which it is not designed. . . ." (Emphasis added.) Comment b to 682 explains that the addition of "primarily" is meant to exclude liability "when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." See also 1 F. Harper, F. James O. Gray, Torts (2d Ed. 1986) 4.9; R. Mallen V. Levit, Legal Malpractice (2d Ed. 1981) 61; W. Prosser W. Keeton, Torts (5th Ed. 1984) 121.
Mozzochi v. Beck, 204 Conn. 490, 494, 529 A.2d 171 (1987).
Assuming that count one sounds in abuse of process, the defendants have not pleaded sufficient facts to support a cause of action. There is not allegation in count one that the plaintiff has used the legal process against the defendants primarily to accomplish a purpose for which it is not designed. Therefore, count one does not sufficiently allege, a cause of action for abuse of process.
C) Vexatious Litigation
 [A] claim for vexations litigation requires a plaintiff to allege that the previous lawsuit was initiated maliciously, without probable cause, and terminated in the plaintiff's favor. . . . In suits for vexatious litigation, it is recognized to be sound policy to allege that prior litigation terminated in his favor. This requirement serves to discourage unfounded litigation without impairing the presentation of honest but uncertain causes of action to the courts.
(Citations omitted.) Blake v. Levy, 191 Conn. 257, 263,464 A.2d 52 (1983).
Count one does not allege any of the elements necessary to support a claim for vexatious litigation.
Inasmuch as count one does not allege sufficient facts to support a cause of action for negligence, abuse of process or CT Page 9078 vexatious litigation, the plaintiff's motion to strike as to that court is granted.
Count Two
Count two alleges that the allegations of count one "so shock the conscience and so violate public policy as to be violative of the Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. 42-110a
et. seq."
Inasmuch as the allegations of count one fail to state a cause of action for negligence, abuse of process or vexatious litigation, they likewise fail to support a claim for a CUTPA violation. Furthermore, the defendants have not alleged any facts regarding how the plaintiff's conduct was unfair and amounted to a CUTPA violation. See Cheshire Mortgage Service, Inc. v. Montes,223 Conn. 80, 105-06, 612 A.2d 1130 (1992), discussed more fully in section four. Therefore, the plaintiff's motion to strike count two of the defendants' counterclaim is granted.
Count Three
Count three of the counterclaim alleges that the plaintiff, as the owner of Village Walk Shopping Center, "[t]hrough mismanagement in response to market conditions . . . permitted the occupancy rate of the space dedicated to retail stores to fall to approximately fifty or sixty percent, with a corresponding vacancy rate of approximately forty or fifty percent." According to the defendants, this situation "resulted in a decline in traffic of potential customers at Village Walk Shopping Center, [and] adversely affected and impacted upon the retail business, gross revenues, net income and profits of the The Children's Store, Inc., d/b/a Tot-Ta-Trot." This, the defendants claim that the plaintiff breached its "implied duty or obligation to exercise care, good faith and fair dealing to avoid or mitigate said situation and conditions regarding the occupancy/vacancy rates at Village Walk Shopping Center. . . ."
A commercial lease imposes upon both a landlord and a tenant a duty of good faith and fair dealing. Warner v. Konover,210 Conn. 150, 154, 553 A.2d 1138 (1989). This duty arises pursuant to 205 of the Restatement (Second) of Contracts which provides "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Id., 154; see also MC Corp. v. DeProfio, et al., 7 CSCR 267 (December 5, 1991, CT Page 9079 Vertefeuille, J.).
 As comment (a) to 205, notes: "The phrase `good faith' is used in a variety of contexts, and its meaning varies somewhat within the context. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving `bad faith' because they violate community standards of decency, fairness or reasonableness." 2 Restatement (Second), Contracts (1981) 205.
Id., 155.
The defendants essentially allege that the plaintiff breached the duty of good faith and fair dealing in that, through its mismanagement of the property, the vacancy rate in the shopping center increased. The defendants have not cited to any provisions in the lease agreement in the lease agreement which would indicate that such a duty was consistent with the "agreed common purpose" or within the "justified expectations" of the parties. Furthermore the defendants have cited no Connecticut authority in support of their contention that the plaintiff's conduct amounted to a breach of duty. Therefore, the motion to strike as to count three of the defendants' counterclaim is granted.
Count Four
Count four of the counterclaim realleges the allegations contained in the third count, and further alleges that the plaintiff engaged in a continuing pattern of bad faith negotiations with The Children's Store. According to this count, the bad faith negotiations involved an attempt by the parties to renegotiate and modify the terms of occupancy of The Children's Store due to the occupancy/vacancy rate at the Village Walk Shopping Center. The defendants allege that the "bad faith negotiations so shock the conscience and so violate public policy" that the plaintiff has violated CUTPA.
General Statutes 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive CT Page 9080 acts or practices in the conduct of any trade or commerce." General Statutes 42-110g(a) provides in part that "[a]ny person who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages."
The Connecticut Supreme Court has stated:
 It is well settled that in determining whether a practice violates CUTPA we have "adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: `(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous, (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].' Conaway v. Prestia, [191 Conn. 484, 492-93, 464 A.2d 847 (1983)], quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233, 244-45 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972) [Sperry] . . . ." McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567-68, 473 A.2d 1185 (1984).
Cheshire Mortgage Service, Inc. v. Montes, supra, 105-6.
In the present case, the defendants have not provided any facts regarding how the plaintiff violated CUTPA. Rather, it is submitted that the defendants have merely stated the legal conclusion that the plaintiff acted in bad faith in its negotiations with the defendant. Inasmuch as a motion to strike does not admit legal conclusions; Mingachos v. CSB, Inc., supra; the motion to strike as to count four is granted.
CONCLUSION
Accordingly, the plaintiff's motion to strike as to the entire CT Page 9081 counterclaim is granted.
Clarine Nardi Riddle, Judge